GARY M. RESTIANO
United States Attorney
District of Arizona
SHEILA PHILLIPS
Assistant U.S. Attorney
Michigan State Bar No. P51656
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: Sheila.Phillips2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-23-01344-PHX-SMB-2 |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESIGATION REPORT AND SENTENCING RECOMMENDATION** |
| v. | |
| Jose D Jesus Quintero-Macias, | |
| Defendant. | |

The United States respectfully requests the Court deny Defendant's objections to the Presentence Investigation Report (PSR) (Doc. 51) because his request for a mitigating role adjustment under United States Sentencing Guidelines (USSG) Section 3B1.2 is unwarranted.

I.     BACKGROUND ON DEFENDANT'S INVOLVEMENT WITH STRAW PURCHASES OF FIREARMS

On September 26, 2023, a grand jury in the District of Arizona indicted Defendant and his two codefendants. (Doc. 1).   The nine count Indictment charged Count 1: conspiracy (to make material false statements during the purchase of a firearm); and Counts 2 through 9: Material False Statement during the purchase of a firearm. *Id.* It charged Defendant with Counts 1, 2, 3, and 5; Codefendant Samuel Horacio Martinez-Rodriguez

with Counts 1 and 6 through 9; and Codefendant Jose Eduardo Puentes-Fierro with Counts 1, 4, and 9. PSR ¶ 1.

On March 4, 2024, Defendant pleaded guilty to Count 5 of the indictment, Material False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and entered into a written plea agreement that set a low-end cap. an PSR ¶¶ 3 and 4. Between October 22, 2022, and February 22, 2023, an unindicted co-conspirator known as "Lincho" used all three codefendants to make straw firearm purchases and provided each cash to purchase the firearms on his behalf. PSR ¶ 27. He paid all three codefendants for their straw purchases. *Id.*

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began its investigation after Sprague's Sports notified agents of codefendant Martinez-Rodriguez's suspicious firearms purchase. PSR ¶ 8. Later that day, Customs Border Patrol stopped Defendant and Martinez-Rodriguez as they attempted to leave the United States, but no firearms were found in the vehicle. PSR ¶ 9. Defendant was driving the vehicle and was with Martinez-Rodriguez during the purchase of the firearms. *Id.*

ATF agents interviewed Defendant, who lived in Mexico, at the border. PSR ¶¶ 11-12. During the interview, he admitted that he made multiple straw purchases of firearms in exchange for money and that the firearms were for a person known as "Lincho", who was later identified by agents as Hever Emmanuel Miranda-Bojorquez. *Id.* According to Defendant, Puentes-Fierro would meet "Lincho" at a McDonald's in San Luis to get the money to purchase the firearms, and to obtain instructions on what firearm to purchase. *Id.* Defendant stated Puentes-Fierro and "Lincho" were also at Sprague's Sports when he and Martinez-Rodriguez were there, and Puentes-Fierro provided "Lincho" with receipts for the group's purchases that day.

ATF's investigation revealed Defendant purchased a total of three assault rifles. PSR ¶¶ 9 and 12. On three separate Form 4473s, Defendant provided false information and stated he was the actual purchaser of each firearm, when he knew he was buying each firearm for Miranda-Bojorquez. *Id.* and *See* PSR ¶¶ 17, 19-20 and 27.

The case agent verified that codefendant Martinez-Rodriguez purchased five firearms; and codefendant Puentes-Fierro 16 firearms. *Id* and PSR ¶ 22.  The agent also verified Defendant and codefendant Puentes-Fierro had knowledge the firearms would be transported to Mexico; however, codefendant Martinez-Rodriguez did not.  *Id*. The agent confirmed codefendant Puentes-Fierro recruited Defendant and Codefendant Martinez-Rodriguez to make straw purchases for Miranda-Bojorquez.  *Id*.

The Probation Officer considers Defendant an average participant as he knew the assault rifles he purchased would be smuggled to Mexico. PSR ¶ 24. On three separate Form 4473s, he provided false information and stated he was the actual purchaser of each firearm, when he knew he was buying each firearm for Miranda-Bojorquez. *Id*.

The Probation Officer likewise considered codefendant Martinez-Rodriguez, who has been sentenced, as an average participant and codefendant Puentes-Fierro as a manager or supervisor of the criminal activity which involved five or more participants. PSR ¶ 25. Puentes-Fierro recruited Defendant and Martinez-Rodriguez. *Id.*  He also made 16 straw purchases knowing the firearms would be smuggled to Mexico. *Id.*  One of the firearms Puentes-Fierro purchased was recovered in Mexico by law enforcement with a time to crime of six days. *Id.*

II.        SENTENCING GUIDELINES

The PSR (Doc. 50) accurately calculates Defendant's final guidelines range at 18 to 24 months' incarceration with a Criminal History Category of I, and a Total Offense Level of 15.  PSR at 20.   The range incorporates a 2-level enhancement under 2K2.1(b)(1)(A) for the three firearms Defendant purchased and a four-level adjustment pursuant to 2K2.1(b)(1)(6)(A) for knowledge or reason to believe the firearms would be transported outside the United States – in this case to Mexico. Both enhancements are supported by case facts.

The Probation Officer recommends that the Court impose a sentence of 12 months and 1 day incarceration so that the Defendant can qualify for good time.  The United States agrees with the Probation Officer's assessment that Defendant is an average participant for

the reasons mentioned below and does not object to his sentencing recommendation.

Defendant filed objections to the PSR (Doc. 51) and the final sentencing calculations, indicating that the Court should afford him a minor role adjustment under United States Sentencing USSG §3B1.2 because he was less culpable than other coconspirators. *See* Doc. 51.   The United States disagrees as set forth below.

A.   GUIDELINES FOR MITIGATING ROLE ADJUSTMENTS

United States Sentencing Guideline (USSG) Section 3B1.2 decreases a defendant's base offense level if he or she served as only a minor or minimal participant in the criminal activity:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

Defendant maintains he was no more than a minor participant and requests at least a 2-level reduction.  *See* Doc.  51.

In making this determination, the Court should consider the five factors set forth in U.S. Sentencing Guidelines Manual § 3B1.2, cmt., application n.3(C). These five factors in the application note are as follows:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

These factors aren't exhaustive—a judge may consider other factors weighing for or against granting or denying a role reduction.  But all the U.S. Sentencing Guidelines Manual § 3B1.2(b) factors should be considered in making the determination. The ultimate question whether to grant or deny minor role is:  In light of all the circumstances, has the defendant proved more likely than not that he or she was substantially less culpable than other average participants in the criminal activity under the totality of the circumstances.

The Ninth Circuit held that district courts must consider the factors enumerated in the guideline and "compare the defendant's involvement to that of all likely participants in the criminal scheme for whom there is sufficient evidence of their existence and participation." *United States v. Diaz*, 884 F.3d 911, 916 (9th Cir. 2018) ("Going forward, the assessment of a defendant's eligibility for a minor-role adjustment must include consideration of the factors identified by the Amendment, not merely the benchmarks established by our caselaw . . . . "); see also *United States v. Rodriguez*, 44 F.4th 1229, 1234 (9th Cir. 2022) ("We recently clarified that the mitigating-role commentary's reference to the 'average participant' refers to 'the mathematical average,' and that to calculate that average ' "all likely participants in the criminal scheme" must be included'". However, the commentary clarifies under § 3B1.2, cmt., application n.3(B) if a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his or her actual criminal conduct, a reduction for a mitigating role is ordinarily not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

Defendant bears the burden of proof by a preponderance of the evidence on whether the  minor role adjustment applies.  The adjustment is available to defendants who play "a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3(A)). This necessarily means that there must be other participants. U.S.S.G. § 3B1.2, comment. (n.2).

Application Note 3(B) to §3B1.2 provides that a defendant ordinarily should not

receive a mitigating role adjustment if he or she benefitted from a reduced offense level by virtue of having been convicted of an offense that was "significantly less serious than warranted by his actual criminal conduct." Courts also have declined to grant an adjustment in cases in which the defendant's base offense level "does not reflect the conduct of the larger conspiracy," regardless of the offense of conviction.

The United States is unaware of any Ninth Circuit case law regarding the application of a mitigating adjustment in cases involving defendants only charged with making a straw purchase, but at least one other circuit has addressed the application of a mitigating role in that context.    The Third Circuit held that a defendant who made false statements to federally licensed firearms dealer in the purchase of firearms for the leader of the conspiracy did not merit the mitigating role adjustment under § 3B1.2, where she recruited another straw purchaser, was essential to acquisition of firearms and knew that coconspirator planned to remove guns' serial numbers, making them untraceable, and have her report them as stolen. *United States v. Brown*, 250 F.3d 811, 2001 (3d Cir. 2001).

<b>B.    <u>MITIGATING REDUCTION IS UNWARRANTED</u></b>

Defendant's guideline calculation does not reflect the conduct of the larger firearms trafficking conspiracy, and therefore he is not entitled to a minor role adjustment under Application Note 3(B) to §3B1.2.  Here, Defendant was only charged with lying on ATF Form 4473 and participating in a conspiracy to make these false statements—which includes his own substantive offense and assisting codefendants in straw purchases by providing transportation.  He is not charged with aiding and abetting firearms trafficking or in dealing firearms without a license.  As such, Defendant's total offense level is not impacted by 24 plus firearms the codefendants purchased for Miranda-Bojorquez and he is not subject to any possible enhancements relevant to his coconspirators' conduct.

Defendant's final guideline range is only calculated based on his own conduct.  As such, the Court should focus on Defendant's role in the crimes he was charged with and the crime to which he pleaded guilty.  Under this lens, he is clearly not a minor participant. Instead, he is the <u>most</u> culpable person as <u>he</u>: 1) Purchased three firearms with cash

supplied by a coconspirator; 2) Fraudulently filed out three ATF Form 4473s under penalty of law; 3) Acquired all three firearms through fraud; and 4) Delivered each firearm to a coconspirator after each purchase, knowing all three would likely be transported to Mexico. He also lied about living in the United States when he had lived in Mexico for at least three years and used his uncle's address on the ATF Form 4473 to make the purchases.

Even under the broader context of Defendant's role in a suspected firearms trafficking conspiracy, he still fails to establish grounds for a mitigating departure under the totality of circumstances. Multiple criteria list in § 3B1.2, cmt., application n.3(C), which are set forth above, weigh against it. Defendant understood the nature and scope of the criminal activity, he knew the purpose of his straw purchases were to illegally acquire and transport firearms to Mexico, unlike his codefendant Martinez-Rodriguez[1] who was also considered an average participant. *See* PSR ¶ 24. Defendant also made his illegal firearm purchases for money. *See* PSR ¶¶ 25, 19-20. All these factors weigh against a mitigating downward adjustment.

It is true that Defendant is less culpable than codefendant Puentes-Fierro who made significantly more firearms purchases (which will increase his potential guideline range) and who recruited Defendant and codefendant Martinez-Rodriguez to make straw purchases; however, the Probation Officer recommends that Puentes-Fierro receive an upward adjustment as a manager or organizer of the straw purchases because Puentes-Fierro is more than an average participant. Therefore, his sentencing range will be substantially higher than Defendant's and rightfully so.

III.    CONCLUSION

Therefore, the United States respectfully requests the Court deny Defendant's request for a minor or minimal role downward adjustment.    Further, the United States

---

[1] On April 1, 2024, the Court sentenced Martinez-Rodriguez to 10 months' imprisonment followed by supervised release. His guideline range did not reflect a minor-role adjustment.

does not object to a 12 months and 1 day sentence followed by a term of supervised release.

Respectfully submitted this 20th day of May 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Sheila Phillips*
SHEILA PHILLIPS
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Tony Rollman
Law Office of Tony Rollman

*C. Covington*
U.S. Attorney's Office